Filed 10/31/24  P. v. Vanderbilt CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SHAKIA RAYNIQUE VANDERBILT,<br><br>        Defendant and Appellant. | A168636<br><br>(San Mateo County<br>Super. Ct. No. 20-SF-008144-A) |

The trial court sentenced Shakia Raynique Vanderbilt to 32 months in prison after she pled no contest to fleeing a pursuing peace officer while driving recklessly and admitted a prior serious or violent strike conviction under Penal Code section 1170.12, subdivision (c)(1).[1]  Vanderbilt argues the trial court erred by denying her motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) to dismiss the prior strike.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 18, 2020, Vanderbilt was stopped by California Highway Patrol officers who observed the car she was driving had a folded paper

---

[1] All further undesignated statutory references are to the Penal Code.

1

license plate that obscured the license plate number.[2]  Vanderbilt initially gave a false name and birthdate to the officers, but later provided her real name and explained she used the false name because she was involved in a domestic violence incident.  At the time of the stop, her driver's license was suspended.

The officers completed a notice to appear for driving on a suspended license and told Vanderbilt her car would be impounded for 30 days. Vanderbilt, who had stepped out of the car along with her passenger, signed the notice to appear and asked to retrieve property out of the car.  The officers obliged; Vanderbilt and the passenger got back in the car and began to put their belongings in their bags.  Vanderbilt then started the car, closed the door, and drove away, nearly striking an officer.  She disregarded the officers' command to stop and led them on a vehicle pursuit, during which she drove "recklessly" despite the road being wet from rain.

*Charges and No Contest Plea*

On December 16, 2020, an information was filed charging Vanderbilt with two felonies: assault with a deadly weapon (§ 245, subd. (a)(1); count 1) and fleeing a pursing peace officer's vehicle while driving recklessly (Veh. Code, § 2800.2, subd. (a); count 2).  The information also charged three misdemeanors: giving false information to a peace officer (Veh. Code, § 31; count 3), driving with a license suspended for reckless, negligent, or incompetent driving (*id.*, § 14601, subd. (a); count 4), and driving with a suspended license (*id.*, § 14601.1, subd. (a); count 5).  The information alleged

---

[2] As Vanderbilt stipulated to the factual basis for her plea based on discovery, the factual summary of the instant offense conduct, which the parties do not materially dispute, is taken from the probation report.

2

Vanderbilt had sustained a prior serious or violent strike (§§ 667, subds. (b)-(j), 1170.12, subd. (c)(1)).

On May 5, 2023, Vanderbilt entered into a negotiated plea agreement that provided she would plead no contest to count 2, fleeing a pursing peace officer's vehicle while driving recklessly, and admit the prior strike allegation. In return, she would receive a maximum sentence of four years in prison; she would be referred for a probation report; the court could consider a *Romero* motion; and the prosecution would move to dismiss the balance of the information. That same day, Vanderbilt entered a no contest plea to count 2 and admitted the prior strike, and the court dismissed the remainder of the information.

*Probation Interview and Report*

The probation officer filed a report prior to sentencing recommending the court deny probation and impose a base term of 16 months in prison. The report detailed the probation officer's efforts to interview Vanderbilt and her criminal history as follows.

*Interview Efforts*

On May 18 and May 22, 2023, Vanderbilt failed to appear for two scheduled appointments with the probation officer and failed to contact probation. In response, the probation officer filed a memo asking the court to continue the sentencing hearing and remand Vanderbilt to custody. On June 1, 2023, Vanderbilt informed the probation officer that she had pink eye.

At a hearing on June 15, 2023, the court denied the request to remand Vanderbilt to custody but continued the sentencing hearing to allow for preparation of the probation report. The court ordered Vanderbilt to report to the probation department after the hearing. While in court, Vanderbilt "was disruptive, rude and continued speaking out of turn multiple times" and

3

"was believed to have made several misrepresentations." In the hallway, "she was heard on the phone cursing and screaming."

Vanderbilt went to the probation department later that day. According to the department's receptionist, Vanderbilt was disruptive in the lobby and demanded an " 'emergency transfer . . . back to [her] county.' " When Vanderbilt first arrived, "she made a threatening statement (while speaking to someone on the phone)." According to the receptionist, Vanderbilt was saying she " 'was going to set stuff off because she will not be going to jail for old charges, she will go for new charges.' "

When the probation officer went to the lobby, Vanderbilt was "acting very agitated and belligerent" and asked if the officer was the one who wrote the continuance memo about her and wanted her to go to jail, then spoke over the officer's attempted responses. After further discussion, the probation officer took Vanderbilt to a room to conduct the interview. Vanderbilt indicated she had been employed as a bakery assistant for the last three years and had full custody of her two children, ages five and 11.

During the interview, Vanderbilt "displayed an attitude of short temperedness, rudeness, and defiance to authority." It was difficult to gauge her level of remorse as she did not want to talk about the instant offense. She stated she did not remember any prior convictions as she " 'forgets about the cases and moves on' " after she is sentenced. When the officer asked Vanderbilt if she would be willing to abide by the terms and conditions of probation, if granted, she responded: " 'What do you mean if I get probation? I'm getting probation.' " However, she did express a willingness to follow probation conditions, and noted that being on probation would help her because she was " 'not trying to go on that road again.' "

In the middle of the interview, Vanderbilt answered a phone call and told the caller, " 'They got me doing this shit.' " When the probation officer asked her to put her phone away, Vanderbilt said she was speaking to the person that took care of her five-year-old daughter, who has Down syndrome. She then told the officer she had to leave because her car was going to be towed. The officer offered to reschedule, but Vanderbilt declined, stating she just wanted to get the interview over.

Toward the end, Vanderbilt became agitated and again referenced the continuance memo, telling the officer: " 'You're a Karen, you lied on me.' " As the officer walked her out after the interview, Vanderbilt opened her purse, visibly displaying money, and stated, " 'I got ten thousand dollars in my purse and five thousand dollars in my shoes,' " pointing to her shoes.

*Conviction and Probation History*

The probation report indicated Vanderbilt had a juvenile record and lengthy adult criminal history, including the instant prior strike conviction for second degree robbery (§ 212.5, subd. (c)), as well as prior felony convictions for burglary (§ 459); grand theft (§ 487, subd. (a)); and conspiracy to commit a crime (§ 182, subd. (a)(1)). She also had several prior misdemeanor convictions for possession of burglary tools (§ 466); accessory (§ 32); vandalism (§ 594, subd. (a)); assault with force likely to produce great bodily injury (§ 245, subd. (a)(4)); and multiple convictions for obstructing, evading, or providing a false name to peace officers (§§ 148, subd. (a)(1), 148.9; Veh. Code, § 2800.1, subd. (a)).

Vanderbilt was on three separate grants of probation from different counties when she committed the instant offense conduct. She had two previous terms of probation revoked or terminated unsuccessfully.

5

In 2022, while the instant proceedings were ongoing, Vanderbilt committed felony second degree burglary (§ 459) and was sentenced in May 2023 to two years' probation in San Francisco County.

*Romero Motion*

In her *Romero* motion, Vanderbilt asked the court to dismiss her prior strike conviction for purposes of sentencing, arguing that the instant offense conduct was neither serious nor violent and, while the conduct was dangerous, no one was harmed. Also, the prior strike was from 2014 and she had not committed another strike offense since then. Finally, she was in a stable place as a mother of two young children (one with special needs) who worked at a bakery and planned to return to a second job once her children started school.

Attached to the *Romero* motion were statements by Vanderbilt, her employer, and her San Francisco County probation officer. Vanderbilt acknowledged her "bumpy past" but asked the court to give her a chance. She noted she had a stable home, a job, and two children, including a five-year-old with Down syndrome and health complications whom she was afraid to leave behind. Her employer stated Vanderbilt had been employed at the bakery for two years and also worked as a Youth Director for five to six years; she was a great mother and responsible adult who took her job seriously; and she was improving her life daily. The San Francisco probation officer stated Vanderbilt had complied with reporting instructions, had no violations, recently obtained employment, and was professional and courteous in their interactions.

*Romero Ruling and Sentencing*

The *Romero* motion was addressed at the August 14, 2023 sentencing hearing.

6

The prosecutor orally opposed the motion, citing Vanderbilt's history of criminal conduct, including after the instant offense conduct. The instant offense involved "egregious" driving, and Vanderbilt had a history of fleeing from police in her car and endangering public safety. Further, her attitude was "horrific" and the probation report was one of the worst the prosecutor had seen regarding a defendant's amenability to probation. Specifically, Vanderbilt was disrespectful and rude to the court, difficult for probation to interview, and engaged in "threatening behavior" when she showed up to the probation department for the interview.

Defense counsel responded by noting the probation interview was conducted the same day Vanderbilt was facing a potential remand to custody, which "obviously" upset her and left her "not in a good place" because she was not prepared to be taken into custody due to the care her special-needs child required. Counsel continued: "Everything that you're reading is one snapshot of one day. We've all had bad days, all have had things that upset us. My client's anxiety unfortunately comes out in the form of anger rather than her ability to deal with it in a calmer way. But it was very upsetting." Counsel asked the court to grant the *Romero* motion and suspend imposition of a prison sentence based on the length of time since the prior strike conviction, Vanderbilt's employment and need to care for her child, and her success on San Francisco County probation.

The trial court denied the *Romero* motion and denied probation. The court reasoned:

> "[U]nfortunately, this probation report is not the snapshot of one day. It's a snapshot over a decade of continuing behavior of not abiding by laws and not respecting authority in its full . . . .

> "In this case she failed to appear for her probation appointment, failed to contact probation. When she was finally

7

ordered there, instead of being remanded, she was disruptive, rude, spoke out of turn multiple times while in court, was disruptive in the probation lobby, was acting agitated, belligerent, picked up the phone during her interview saying, 'They got me doing this shit,' told probation, 'You're a Karen,' 'You lied on me,' kept continuing. And then apparently even made a threatening statement to the receptionist on her way out.

"She was on supervised probation after this incident for burglary. So even after this she didn't learn. She picked up a case in San Francisco, was on probation there. As the probation report says: The defendant's behavior has not changed in ten years. She's received sanction upon sanction, continues to engage in the same exact behavior. She was on three grants of probation when she committed this offense."

The court further cited Vanderbilt's lengthy criminal history that began with juvenile cases. It found the prior strike robbery concerning as the incident began with a loss prevention officer attempting to retrieve stolen items from Vanderbilt and escalated to her saying "You better get away before I fucking stab you," pulling out a knife, and cutting the officer's finger. The court concluded Vanderbilt had no regard for public safety or abiding by authority and accordingly denied the motion.

The court sentenced Vanderbilt to the low term of 16 months, doubled to 32 months for the prior strike. Vanderbilt appealed.

## DISCUSSION

Vanderbilt argues the trial court erred in denying her *Romero* motion. She contends she falls outside the spirit of the three strikes law, the court failed to consider relevant factors, and the court based its decision on the mistaken belief that she threatened the probation office receptionist.

We review a trial court's refusal to dismiss a prior strike under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).) Under that standard, a defendant must show

8

the trial court's decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376–377.) Applying that standard, we affirm.

The three strikes law is intended "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of one or more serious or violent felony offenses." (§ 667, subd. (b).) It "establishes a sentencing norm" and "carefully circumscribes the trial court's power to depart from this norm." (*Carmony, supra,* 33 Cal.4th at p. 378.) The law requires a trial court to explicitly justify any decision to depart from the norm, thereby creating "a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Ibid.*)

A trial court may strike prior felony conviction allegations in cases brought under the three strikes law when dismissal is "in furtherance of justice." (§ 1385, subd. (a); *Romero, supra,* 13 Cal.4th at pp. 529–530.) However, a court's discretion to dismiss a prior strike is limited. (*Romero,* at p. 530.) The standards for doing so are "stringent" and the circumstances must be " 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of' " the law. (*Carmony, supra,* 33 Cal.4th at pp. 377–378.)

When deciding whether to dismiss a prior strike, a trial court must consider both the constitutional rights of the defendant, including guarantees against disproportionate punishment, and the interests of society, including the fair prosecution of properly charged crimes. (*People v. Williams* (1998) 17 Cal.4th 148, 160.) In doing so, the court "must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects, the defendant may be deemed outside

9

the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.)

The trial court did not abuse its discretion in refusing to dismiss Vanderbilt's prior strike. In concluding dismissal was not warranted, the court properly considered the nature and circumstances of the strike conviction, which involved Vanderbilt wielding a knife and cutting a loss prevention officer's finger when he tried to retrieve stolen property. (See *People v. Williams, supra*, 17 Cal.4th at p. 161.) It also considered her background, character, and prospects, noting her lengthy criminal history that continued even after the offense conduct in this case and her lack of respect for public safety and authority. (See *ibid*.)

Vanderbilt nevertheless contends the court erred, asserting she falls outside the spirit of the three strikes law because the prior strike occurred when she was 21 years old and nine years before sentencing, and the instant offense conduct did not involve violence or result in harm. However, the court's emphasis on the violent nature of the prior offense and her ongoing criminal history since then, rather than on its remoteness or her age at the time, was not "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra*, 33 Cal.4th at pp. 376–377.) In addition, even though no one was injured in the instant offense, Vanderbilt's actions in driving away and nearly striking one of the officers before leading them on a car chase on wet roads does not favor the finding of an abuse of discretion by the trial court. Instead, it supports the court's finding that she lacked regard for public safety and authority.

Vanderbilt also argues the court placed too much emphasis on the probation interview and failed to consider other relevant factors, such as her

10

performance on probation in San Francisco, her cooperative and responsible character, her efforts to find employment, and her role as a primary provider to her children.  Merely because the court emphasized Vanderbilt's interactions in court and with probation during this case—which the court reasonably found to be "disruptive, rude, . . . [and] belligerent"—does not mean the court failed to consider the other factors she identifies.  (See *People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary."].)

Finally, Vanderbilt contends the court based its ruling on the erroneous belief that she threatened the probation office receptionist when it stated Vanderbilt "apparently even made a threatening statement to the receptionist."  As an initial matter, the court's statement is not unsupported just because Vanderbilt made the threatening statement " '*while speaking to someone on the phone*' "; it was reasonable for the court to interpret her statement in the lobby that she " 'was going to set stuff off because she will not be going to jail for old charges, she will go for new charges' " as threatening to the receptionist.

More importantly, however, and contrary to Vanderbilt's assertion, there is no indication in the record that this brief reference by the court "must have been the critical aspect of her interactions with probation that justified" denying her *Romero* motion.  Rather, the reference came in the middle of the court's much lengthier discussion of Vanderbilt's "disruptive" behavior in court and at the probation office, her criminal history, her involvement in crimes both before and after the instant offense conduct, and her lack of respect for authority.  Hence, the record does not show this

11

reference was "critical" to the court's ruling on the *Romero* motion, which, as previously discussed, was not an abuse of discretion.

In sum, this case does not involve " 'extraordinary' " circumstances under which Vanderbilt can be deemed to fall outside the spirit of the three strikes law, and the court did not err by refusing to depart from the law's sentencing norm.  (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

## DISPOSITION

The judgment is affirmed.

_____
PETROU, J.

WE CONCUR:


_____
FUJISAKI, ACTING P. J.


_____
RODRÍGUEZ, J.


A168636/*People v. Vanderbilt*

13